23-2236 Eastern Missouri James Setchfield v. Scott Ronald et al. All right, good morning gentlemen, Mr. Wise, we'll hear from you first. May it please the court, my name is Brian Wise, I'm an Associate County Counselor with Scott Ronald and Officer Nicholas Severling in this matter. I've requested a 12 minutes of argument, 3 minutes of rebuttal time, I will keep an eye on the clock there, thank you. This case touches upon the integrity of qualified immunity and the critical role summary judgment plays in preserving its purpose. As noted, qualified immunity is an immunity from suit rather than a mere defense to liability. It is effectively lost if a case is erroneously permitted to go to trial and law enforcement officers are at least entitled to a thorough determination of their claim qualified immunity, including at the summary judgment phase, if that means to mean anything at all. The purpose of summary judgment is to prevent the assertion of unfounded claims and is well settled that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment. The Supreme Court in Scott v. Harris has held that when opposing parties tell two different stories, one of which is blatantly contradicted by the record, a court should not adopt that version of the facts when presenting a summary judgment. And this court has held that in the summary judgment, a party should not be allowed to create issues of credibility by contradicting its own earlier testimony. And this is precisely what the plaintiff, Mr. Satchfield, has done in this case. Between his complaint, deposition testimony, which includes sworn affirmation in that testimony as to the correctness of his complaint, and subsequent affidavit, Mr. Satchfield has set forth contradicted versions of facts, contradictions presented wholly and completely on his own. The district court has not rejected Mr. Satchfield's versions of events, which are blatantly contradicted in the record, not only by the defendant's consistent accounts, but also by plaintiff's own accounts as well. Rather, the district court selectively asserts certain facts among these contradictory assertions. For example, if I may address the record, deposition, Mr. Satchfield's deposition, and that APP, I'm going to refer to the APP 254, he testifies under oath, he's presented with the complaint, testifies under oath, at the questioning of his own counsel that his complaint presented to him is correct. And then there's contradictions between what is in his affidavit and what is in his complaint. And these are material facts, really, when you take into consideration. One is whether he was told to leave the area. In his affidavit, at APP 508, paragraph 22, at no time was he told, he says, no time was he told to leave the area. In his complaint, at APP 7, at paragraph 29, he asserts that Corporal Ronald told him to leave the area. Another issue is whether or not he was informed that he was being arrested. In his affidavit, APP 508, paragraph 22, he's never told he was being arrested. In his complaint, at APP 7 to 8, at paragraph 30, Corporal Ronald, he told him he was going to arrest him for interfering with his officer. And even in the deposition, at APP 246, he was told, something about being arrested. Another issue was whether or not he moved his vehicle in that time. At the affidavit, at APP 507 and 508, at paragraph 16 and 27, he never, he said he never moved his vehicle, attempted to leave his vehicle, or tried to open the door. In his complaint, at APP 7 to 8, and paragraph 30, he states that after he was told to leave the area, he pulled his car away from Corporal Ronald's vehicle, parked, and attempted to open the driver's side door of his car, to speak with Officer Siebeling. Regarding the issue of whether or not he was resisting arrest, at the affidavit, APP 508, at paragraph 27, when Officer Siebeling reached inside his vehicle, the plaintiff lifted up his left arm in a protective manner. But in the complaint, at APP, at paragraphs 30 and 31, when Corporal Ronald attempted to remove him from the vehicle after telling him he was being arrested, the plaintiff pulled back and retreated to a vehicle resisting arrest. This court does have limited jurisdiction in this matter, in terms of what it can review. But there are three aspects that this court can consider. One, the court is not obligated to accept anyone's party version of the facts when it is blatantly contradicted by the record. Two, it can consider the materiality of the facts in question. And three, it can determine... But this blatant contradiction, I mean, isn't that more of a situation where you have a video that clearly establishes that the story is not right? Or in one case, you have a guilty plea that undermines the facts? I mean, this... The facts, the contradictions that you've suggested seem to me to be nibbling at the edges and may well get you a victory in a trial. But I think you're right. Oftentimes, it is the case that there may be video or audio evidence in the record, something to that effect that is in there. It's not absolutely required. In this situation, we would contend that there are, frankly, stark contradictions coming from the plaintiff himself, both sides, and there are separate accounts. And in that type of situation... But again, they seem to be minor things that don't undermine the entirety of the story. Okay. And I mean, what I would say, maybe it doesn't undermine the entirety of the story, but there are subtle things that affect us. We're dealing with an objectively reasonable standards from the police standpoint. And so these issues, whether he was informed of arrest, whether he moved his vehicle, whether he was resisting arrest and shied away, these are key factors. Resisting, I can see as being a significant factor. But whether he was told he was arrested, so what? That doesn't necessarily undermine whether the arrest was proper and whether the force was excessive. I would contend, at least on the resisting arrest issue, that information of whether or not he was arrested was significant there. Yeah. It's blatantly contradictory of the overall story. I understand. And what we're saying is that there's two sets of facts here, basically, being provided. Well, that's kind of my problem with your argument. Yes. That we're not allowed to find facts. We don't have jurisdiction for that, right? Yeah. Well, again, like I say, we don't have jurisdiction. There are certain aspects that you can, three aspects you can consider. One is not obligated, but again, the blatant contradiction is the one. The second one is the materiality of the facts in question. If you can find a result that doesn't come to those, relying on those facts, then we can. And then the third thing I would say is whether or not to credit affidavit testimony when considering summary judgment, as in the city of Burang v. Ames. And I think what's important about it is that to deny such a review at this stage would render the official's claim of qualified immunity a nullity and defeat the purpose of qualified immunity altogether at this stage. So these need to be reviewed. Counsel, do you argue in your brief that the summary judgment or count by the plaintiff contradicts, is contradicted by statements in his complaint? Did you raise that argument below? I believe that argument was raised below in the briefing by Mr. Smith before me. I beg your pardon? I believe it was raised in the briefing by Mr. Smith before me about the contradictory statements in his affidavit. Of course, that's a different argument from the sham affidavit argument, or it's, I mean, it's a official admission. And so it comes in with a kind of a higher status, as it were, than some other kinds of statements might. But it seems to me, I mean, I'm not clear that argument was actually advanced in the district court. So I find that a matter of some difficulty. Okay. Yeah. And in terms of the... What did you say about Mr. Smith before me? Oh, sorry, I apologize. No, he was the attorney of record prior to... You're saying a different lawyer handled the case in the district court, and you think he may have raised this issue about the complaint, but you're not sure? I believed, I thought, when I reviewed the record that he had raised it. But I don't have a direct cite to that, and I could... Well, I don't know if he did. I mean, you're supposed, under Rule 56, you're supposed to cite the parts of the record that you rely on, right, to support or dispute summary judgment. Correct. And the question is whether he cited the complaint as an admission by the plaintiff. Anyway, you're not in a position to give us a record citation where he cited... On that right now. I could follow up with that if the court pleases. Well, you don't have to follow up. We can look it up ourselves. I was just giving you an opportunity to comment if you knew right where it was in the record. Yeah, I was not sure where it would be in the record specifically. My apologies for that. And on these points, really, this is one of the three points of contention that we have. First, the district court erred in accepting Mr. Sedgefield's declarations containing his affidavit, submitted an opposition to the officer's motion of summary judgment. Again, we do declare that those were blatantly contradicting the record by his own statements and in his deposition and his complaint. And again, to which I know it's heightened status over other records, but he did swear under testimony in his deposition that the allegations in the complaint were accurate. The second point of error is that the district court erred in denying the officer's qualified immunity on Mr. Sedgefield's claims of excessive force. Corporal Ronaldon, Officer Sieberling did not violate Mr. Sedgefield's constitutional rights and acted objectively, reasonable in their use of force to effectuate Mr. Sedgefield's arrest. One point on that is that even if we were to accept for the sake of argument Mr. Sedgefield's claims, there is a point of view that when they reached in to try to stop the car, that the car was started again. And this would be under his perception. He's claiming that they had restarted the car. But I would say that under, we have to... Say that again, he's claiming what? Mr. Sedgefield's claiming that the officers restarted the car, that he had stopped the car and then when they were making attempts to stop the car, that he had restarted it again. He restarted it again? Correct. Who did? Sorry, that the officer who reached in restarted it again. He's unsure if it was Sieberling or Ronald at that point, but that he started it again. And so what I'm trying to get into that is saying that even if it's, from the point of view of an officer in that situation, it could be perceived as starting the car as a threat and needed to exert a certain amount of force to effectuate arrest in that situation, both for their own safety as well. And then third, the District Court erred in denying the officers qualified immunity because the officers had actual probable cause or at least arguable probable cause to arrest Mr. Sedgefield. And further, the District Court could not conduct sufficient analysis on whether Corporal Ronald or an officer Sieberling had arguable probable cause on that point. The main thing is that they identified what they knew to be material issues of fact and they went into the first prong of whether a constitutional violation had occurred, but did not do any analysis in terms of the clearly established standards at that time. Again, now I was going to reserve the rest of my time for rebuttal and coming upon it if there's no further questions at this time. Thank you. Very well. Thank you for your argument. Mr. Lynch, we'll hear from you. Thank you, Your Honor. May it please the Court. Again, my name is John Lynch and I represent the plaintiff, Apolli, in this case, Mr. James Sedgefield. Your Honors, aren't we, aren't what we're doing here today, or isn't what we're doing here today just arguing over facts? Isn't this akin to Thompson v. Dill or Riggs where we're just in here arguing a difference in facts? And that's what the proper venue would have been before the District Court. Nothing that my opposing counsel said indicates anything of substantial import in terms of a blatant contradiction. And in fact, the District Court, in its 26-page memorandum, spent several pages, including starting on page 7, highlighting what it called the differences and indicating after it did a thorough Frankly, they should have done a more diligent job in deposing the plaintiff, Apolli, or minor. And that's what we're talking about, minor and immaterial discrepancies. I'll give you an example. What they addressed in the pleadings are things like confusing the names of the two officers that exacted the beating on plaintiff, Apolli. The District Court, on page 9 of its memorandum and Mr. Setchfield doesn't say anything about the names of the officers. He gets confused when he's pressured as to who the officers were. And he correctly used an affidavit to clarify those. And he did so because he was given an opportunity to see what these two gentlemen looked like with their badges. I think that the appellants would be hard-pressed to say someone that is involved with an their badge numbers and designated serial numbers. I would also ask you this question, Your Honors. Does the District Court's decision, determination regarding the qualified immunity analysis plainly, is it plainly foreclosed by a decision regarding the material fact dispute? I don't think it is. What the facts that are at issue, that are important, that are consistent and where the to the scene over an infraction to pick up his son. He didn't ask to come there. His son was given permission to call him. When he got there, he moved to a couple different locations in his car until he had an encounter with one of the police officers who he thought was a jerk. So he gave him lip service back. At that point in time, one of the officers, defendant Severling, didn't like that and reached inside of his car. And then he proceeded admittedly, it's in the record, to punch him 8 to 10 times about the face, crotch, abdomen, stomach and then yank him out of the car. And then there's one huge critical fact. How about the fact though that he pulled away even defensively perhaps? Isn't that maybe relevant to resisting arrest? Well, you can resist arrest by flight in the state context and you can resist arrest by doing something to prevent an officer from removing you from the vehicle or from handcuffing you, for instance, or restraining you. In this instance, I would say that it's a natural human reaction if someone is going to touch you to put your hand up. There's no other evidence to suggest that he did anything other than put his hand up. And the critical fact that I was getting to is he never was given an opportunity to open the door because he was seat belted. And Detective Officer Severling admitted that once he was done with this, he had to unbuckle him, remove him from the car and then he did a leg maneuver to trip him to the ground and put him face first on the asphalt. Again, we're arguing facts. Those are the real facts of the issue that the court determined that passes muster in terms of summary judgment. Not switching names, not this ambiguity regarding whether or not who told him he was under arrest or if he was under arrest. And then context is always important. You know, lawyers always play games with semantics. And he standard clearly suggests that we resolve those ambiguities in favor of the plaintiff, at least for summary judgment purposes. And then one other issue is the way that they're arguing this appeal is they want you to make credibility determinations as to this particular gentleman. This particular gentleman is an older person who stands his dentures to pick up his son. And it defies credulity to say that for no reason he's just going to go up there and start a fight with a bunch of police officers. And they want you to weigh that credibility because he messed up the names or couldn't remember specifics. I'll submit to you if we do get to trial, he's probably going to make a couple more mistakes when he's cross-examined by opposing counsel. But none of that matters. I'd like to abide on admissions in the complaint in their Rule 56 papers in the district court. Oh, with respect to differences between the facts in the complaint versus the deposition versus his affidavit? No, I don't think I'm, I'm not referring to the sham affidavit question. I'm referring to the argument on appeal that the plaintiff admitted certain things in his complaint that would have justified a reasonable officer taking certain of the actions here. And I thought there was a question whether those parts of the complaint had actually been asserted in the district court. They were not. And if you look at the 26-page memorandum in order by the district court, there was no argument  Well, no, it's not in the district court's order. I'm talking about whether it was in the briefing from the officers. That's where it has to be. If the district court missed it, then that could be reversible error. But the officers would have to cite the particular parts of the record that support their position. And I'm asking whether you, I guess we can go look at the record. I just thought you might have a view on that. Even so, I would say that that's Even so, meaning they did cite the record, the complaint? No, I don't believe they cited the complaint. Okay. Even if they did, assuming they did, it's still those minor and immaterial differences. Well, the complaint does say he pulled away. And you say that's a natural human reaction. But the question isn't whether it's a natural human reaction. It's whether a reasonable officer could have viewed it as resistance. Well, and if you compare that to other cases where there are traffic stops, where persons are in the car, I think the court routinely emphasizes things such as impairment. The appellant cited Winters, for example, where that gentleman was kicking, flailing, continued a violent episode at the hospital, and was high on meth. So he was having a methamphetamine episode. That's not this case. There's no evidence of impairment. There's no evidence of kicking, flailing, or doing anything other than perhaps pulling away from being punched. And I think that would go, there's a host of other cases in that respect, too, that we cited in our brief. The next issue I just wanted to point out is the appellants cite a whole host of cases in their reply brief that indicate that they, that supports what their position is in this case. And I would say they do not. The first one is Brockington. The next one would be Kong-Brockington. If you look at those facts, that's what we normally see in the Court of Appeals, is where you have a very obvious basis for probable cause in Brockington. Woman says there's a stolen boat, provides information to police officers, they act on that information in good faith, and then they go find out that's a bunch of bull, right? So then they get sued for that. Well, that's a common-sense application of the law with respect to summary judgment, which doesn't apply here. It was reasonable for those officers to act in that regard. Compare that with what we're having, what we have here. Mr. Setchfield was invited to pick up his son. Their actions were unreasonable. He didn't assault them, threaten to assault them, resist arrest, because he was never there. He's never under any scrutiny by law enforcement. The next one is Kong. With respect to Kong, that is the shooting of the Arguably, there's probable cause to act in that respect, too, because there's an armed person, there's other people that could be harmed, and the officers could be harmed. Those things don't apply in this case. This is one of those rare, but paradigmatic examples when a 1983 case goes through for trial. I would also note that the appellant cite Reed. This is not a Reed-esque situation, Reed v. City of St. Charles, where the gentleman complains of being subject to excessive force, and he was not evading arrest. He was hiding in the bushes waiting for police officers. Well, I used to be one, and I could tell you people don't hide in the bushes and wait for police officers to arrest him. Some of the things that differentiate that case from this one is he made his complaint based solely on his own testimony, but there was overwhelming evidence via the ER records, medical records, the body cam footage, and the police officers' other documents to say, hey, nothing that he said passes muster. He's lying, and then he never mentioned anything during his plea, and in this instance, Mr. Setchfield wasn't seen attacking anybody, didn't hide in the bushes, didn't flee, and never pleaded to any offense. So that's wholly distinguishable from what we have here. It's not a Reed-esque situation. So we have, I hate to use the term elderly gentleman, I don't know what that, you know, it is the threshold for elderly now, but elderly gentleman picking up his son. The only thing Mr. Setchfield was armed with on that night in question was his walker, which was in the back of his loaner SUV, which is why you have the discrepancy, which is also a trial question of whether or not the car was on or off because he pushed the button because it's a push start and it turned off and they had to turn it back on to move it. Hence the argument that he never tried to move his car. So I think when you evaluate those issues, this definitely passes muster and they're asking you to weigh the evidence and that's just simply not subject to this court's jurisdiction. And again, I would defer to your cases in Thompson v. Dill with the state trooper issue and then Riggs with the business search issue and those were both wholly distinguishable from this case as well. And I would note that in the 26-page memorandum in order, everything that the appellants are saying the district court didn't do, it actually did. It said, hey, I do recognize, I'm the judge, I recognize that there are differences in his testimony, but they're not blatantly contradictory. Matter of fact, they're actually pretty consistent with a few exceptions. And second, with respect to the allegations that it's a sham affidavit, that's not a sham affidavit either because affidavits are legally used to clarify ambiguities. Again, do a better and more thorough job in deposing the witness. It's not our job to do that. The district court then went through and did an entire analysis of the qualified immunity, objective reasonableness. It cited a whole host of cases including Montoya v. City of Flandreau where a leg sweep was determined to pass muster, where in Copeland, although opposing counsel says Copeland's not applicable, I would submit that this one quote from Copeland makes it applicable. We, the court, evaluate the totality of the circumstances, including the severity of the crime, the danger the suspect poses to the officer or others, and whether the suspect is actively resisting or attempting to flee. Well, apply that standard to this case. Now, with respect to our brief, we spent a significant amount of time providing the applicable case law. One thing that they say in the reply brief is that we say that you guys can't look at anything. You can't look at anything and weigh the facts. We never said that. What we did say is we correctly cited the standard as to where your jurisdiction is limited, but that's exactly what opposing counsel wants you to do. Weigh the evidence rather than deal with abstract issues of law, and I'll end with this. To see if it plainly forecloses the district court's determination as to a material fact dispute, and I will just cede my time. Very well. Thank you for your argument. Mr. Wise, would you care to make rebuttal? Just really one brief. Well, we relied on the Reid case as well when we were going in there, and while there are certain distinguishable facts in that case there, the point that there was body cam footage, I don't think there was body cam footage in that case. There was no video, and that was the very reason why we cited Reid. It was sort of the absence of that sort of video and audio footage required that we were on there. Other than that, I don't have anything further. If there are any further questions, I'll just cede the rest of my time. Very well. Thank you to both counsel. The case is submitted. The court will file a decision in due course. Counsel are excused.